UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES BUSCH
105 Titus, Rear
Buffalo NY 14212

                    Plaintiff,


          -vs-                                    **Amended Complaint:**
                                                  C.A. 1:20-cv-01515

COUNTY OF ERIE
Erie County Hall
95 Franklin Street
Buffalo, NY 14202

GRACE MOKA, RN
in their  individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

JESSICA HALL, NP
in their  individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

MIKE MCBRIDE, LPN
in their  individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

JULIA DIBIASE-JOHNSTON,
RN in their  individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

LYDIA TORRES, RN
in their  individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

ALLISON PARKER
in their  individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

HEIDI CORNELL,NP
in their  individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

DEBRA WESTFIELD,
RN  in their  individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

JOHN DOES 1-10, said names being
fictitious, but intended to be the
individuals/officers responsible for supervising the Plaintiff
and involved in the within incident

SHC SERVICES, INC.
80 State Street
Albany, NY 12207

JOHN DOES 1-10, said names being
fictitious, but intended to be the
individuals/medical professionals involved in the
within incident, those responsible for providing
medical care to the Plaintiff while he was incarcerated
including but not limited to members of the
Erie County Sheriff's Office Correctional Health Unit
and Erie County Department of Mental Health Services
responsible for providing medical care to the
Plaintiff while he was incarcerated

Defendants.
_____

Plaintiff, by his undersigned counsel, alleges, upon personal knowledge, and upon

information and belief as to all other matters, as follows:

1.      This is an action to redress the deprivation by the defendants of the rights secured to plaintiff by the United States Constitution, New York State Constitution, and federal and state statute.

2.      Starting on August 8, 2019, the plaintiff was in the custody and control and under the supervision of above named defendants and housed in the Erie County Holding Center, located at 40 Delaware Avenue, Buffalo, New York 14202 and the Erie County Correctional Facility located at 11581 Walden Avenue  Alden, New York  14004 .

## THE PARTIES

3.      By virtue of the application of one or more of the exemptions listed in Section 1602 of Article 16 of the CPLR, the limitations and liability imposed by that Article do not apply to the cause or causes of action set forth herein.

4.      Plaintiff  at all times hereinafter mentioned, was and continues to be, a resident of the  County of Erie, and the State of New York.

5.      Upon information and belief, and at all times hereinafter mentioned, the defendant COUNTY OF ERIE was and continues to be a duly organized municipal corporation authorized and existing under and by virtue of the laws of  the State of New York, with offices for the transaction of business in Erie County, and, as such, is subjected and empowered to sue and be sued in the Supreme Court of the State of New York. The COUNTY OF ERIE owns, possesses, has special use of the Erie County Holding Center and Erie County Correctional Facility and is responsible for maintaining it in a safe condition and ensuring that the facilities are in compliance with all laws and regulations applicable.

6.      Upon information and belief, and at all times hereinafter mentioned, defendant GRACE MOKA, RN  was and is a resident of the County of Erie, State of New York, and

was and continues to be an employee of defendants COUNTY OF ERIE and/or SHC SERVICES, INC.

   6.1 Upon information and belief, and at all times hereinafter mentioned, defendant JESSICA HALL, NP was and is a resident of the County of Erie, State of New York, and was and continues to be an employee of defendants COUNTY OF ERIE and/or SHC SERVICES, INC.

   7. Upon information and belief, and at all times hereinafter mentioned, defendant MIKE MCBRIDE, LPN  was and is a resident of the County of Erie, State of New York, and was and continues to be an employee of defendants COUNTY OF ERIE and/or SHC SERVICES, INC.

   8. Upon information and belief, and at all times hereinafter mentioned, defendant JULIA DIBIASE-JOHNSTON,  RN  was and is a resident of the County of Erie, State of New York, and was and continues to be an employee of defendants COUNTY OF ERIE and/or SHC SERVICES, INC.

   9. Upon information and belief, and at all times hereinafter mentioned, defendant LYDIA TORRES, RN  was and is a resident of the County of Erie, State of New York, and was and continues to be an employee of defendants COUNTY OF ERIE and/or SHC SERVICES, INC.

   10. Upon information and belief, and at all times hereinafter mentioned, defendant HEIDI CORNELL,NP  was and is a resident of the County of Erie, State of New York, and was and continues to be an employee of defendants COUNTY OF ERIE and/or SHC SERVICES, INC.

11.     Upon information and belief, and at all times hereinafter mentioned, defendant ALLISON PARKER  was and is a resident of the County of Erie, State of New York, and was and continues to be an employee of defendants COUNTY OF ERIE and /or SHC SERVICES, INC.

12.     Upon information and belief, and at all times hereinafter mentioned, defendant  DEBRA WESTFIELD, RN  was and is a resident of the County of Erie, State of New York, and was and continues to be an employee of defendants COUNTY OF ERIE and/or SHC SERVICES, INC.

13.     Upon information and belief, and at all  times hereinafter mentioned, defendant JOHN DOES 1-10, said names being fictitious, but intended to be individuals/officers responsible for supervising the Plaintiff and involved in every aspect of the within incident were and are residents of the County of Erie, State of New York, and  continue to be  employees of defendants COUNTY OF ERIE and/or SHC SERVICES, INC.

14.     Upon information and belief, and at all  times hereinafter mentioned, defendants  JOHN  DOES  1-10,  said  names  being  fictitious,  but  intended  to  be  the individuals/medical professionals involved in the within incident, those responsible for providing medical care to the Plaintiff while he was incarcerated including but not limited to members of the Erie County Sheriff's   Office Correctional Health Unit  and Erie County Department of Mental Health, were and are residents of the County of Erie, State of New York, and  continue to be employees of defendants COUNTY OF ERIE, and/or SHC SERVICES, INC.

15.     Upon information and belief, and at all  times hereinafter mentioned, SHC SERVICES, INC., the individuals/medical professionals involved in the within incident, those

responsible for providing medical care to the Plaintiff while he was incarcerated, were and still are

a foreign business corporation, they conducted and carried on business in the County of Erie and the

State of New York, they did own, use, possess, lease or otherwise contract for the use of real

property and its appurtenances thereto situated within the State of New York, they transacted

business within the State of New York, and did enter into contracts to supply goods and/or services

within the State of New York, their agents, servants and or employees, appointees or designees, did

commit a tortious act within the State of New York causing injury to the plaintiff as hereinafter

described, and they expected or should have reasonably expected its acts to have consequences in

the State of New York, and at that time said defendant did derive substantial revenue from interstate

commerce.

## CONDITIONS PRECEDENT

16.     That on July 27, 2020, the plaintiff caused defendants COUNTY OF ERIE,

Department of Sheriff of Erie County, JOHN DOES 1-10 said names being fictitious, but intended

to be the individuals/officers involved in the within incident, Thomas Diina, and Timothy B.

Howard, Sheriff of the Erie County Sheriff's Department, and the Erie County Holding Center, to

be personally served with a Notice of Claim pursuant to the Laws of the State of New York relating

to the allegations of the Complaint herein.

17.     The Notice of Claims were served on the above mentioned Defendants

with the permission of the Hon. Jeannette Ogden, by an order dated July 24, 2020,   more than 90

days after the accrual of the respective causes of action.

18.     That more than 30 days have passed since the service of the Notice of Claim

herein, and the adjustment or payment of the claim has been neglected or refused, and the defendants

have failed, declined, or otherwise refused to pay the claim herein.

19.     That the plaintiff has otherwise exhausted any and all administrative remedies relating to the action herein.

20.     This action has been commenced within 1 year and 90 days after the causes of action herein accrued.

21.     At the time and place aforesaid, the defendants were in the course of their employment.

**FACTUAL BACKGROUND:**

22.     Upon information and belief, at all times hereinafter mentioned, there was a known Hepatitis A outbreak at the Erie County Holding Center and Erie County Correctional Facility. Upon information and belief, the Defendants and the Erie County Department of Health knew or should have known about the outbreak.

23.     Per an Erie County Department of Health Press Release dated October 8, 2019, symptoms of Hepatitis A include fatigue, abdominal pain and discomfort, a low grade fever, dark urine, and yellowing of the skin and eyes. Per the same Press release, Hepatitis A symptoms typically appear 15 to 50 days following exposure.

24.     In the last weeks of October 2019, the Plaintiff began to suffer from symptoms of Hepatitis A. At that time, he was under the custody care and control of the defendants. He was fatigued, had abdominal pain and discomfort, he had a fever, his urine was dark, and he had yellowing of his skin and eyes. He reported his symptoms to the Defendants. He was told that he was dehydrated. He was told to drink water and to take Tylenol.

25.     After his initial complaints, his symptoms got worse. He reported his continued symptoms to the Defendants. He told them that he felt he needed to go the emergency room. His request was denied. His symptoms continued and got worse.

26.     As a result of his symptoms and conditions, on October 23, 2019 the Plaintiff was hospitalized at the Erie County Medical Center. Upon information and belief, he was diagnosed with Hepatitis A. Upon information and belief, he contracted Hepatitis "A" by unknowingly ingesting the virus from objects, food, or drinks provided by the defendants that was contaminated by stool from an infected person, being exposed to unsafe conditions of confinement created by the defendants, including but not limited to their failure to address the Plaintiff's medical needs.

27.     The Plaintiff was hospitalized from October 23, 2019 through November 1, 2019. Upon information and belief, while he was hospitalized, he was interviewed by a representative from the Erie County Department of Health. During his interview, he was told that the Hepatitis A outbreak was known to the defendants before he complained of his symptoms. Upon further information and belief, a report was made that documented their findings.

28.     As a result of the negligence and carelessness of the Defendants, as is outlined below, the Plaintiff sustained serious personal injuries.

29.     At all times hereinafter mentioned, the Plaintiff was a pretrial detainee at the Erie County Holding Center and Erie County Correctional Facility.

A.     **AS AND FOR A SEPARATE AND DISTINCT CAUSES OF ACTION AGAINST ALL DEFENDANTS, PLAINTIFF ALLEGES UPON INFORMATION AND BELIEF:**

**NEGLIGENCE:**

30.     At all times hereinafter mentioned, Defendants owned, occupied, controlled, and/or had special use of the Erie County Holding Center and Erie County Correctional Facility. Defendants were responsible for Plaintiff's custody care and control.

31.    Defendants had a duty to provide for Plaintiff's safety and general well-being. They had a responsibility to provide Plaintiff with with reasonably safe conditions of confinement, that includes but is not limited to, adequate food, clothing, shelter, and medical care.

32.    Defendants had a duty to provide Plaintiff with environmental conditions that did not pose serious risks to his health and safety, including an environment that did not have deficient sanitation, inadequate ventilation, or pest infestation.

33.    Upon information and belief, at all times hereinafter mentioned, there was a known Hepatitis A outbreak at the Erie County Holding Center and Erie County Correctional Facility. Upon information and belief, the Defendants and the Erie County Department of Health knew or should have known about the outbreak.

34.    Per an Erie County Department of Health Press Release dated October 8, 2019, symptoms of Hepatitis A include fatigue, abdominal pain and discomfort, a low grade fever, dark urine, and yellowing of the skin and eyes. Per the same Press release, Hepatitis A symptoms typically appear 15 to 50 days following exposure.

35.    In the last weeks of October 2019, the Plaintiff began to suffer from symptoms of Hepatitis A. At that time, he was under the custody care and control of the defendants. He was fatigued, had abdominal pain and discomfort, he had a fever, his urine was dark, and he had yellowing of his skin and eyes. He reported his symptoms to the Defendants. He was told that he was dehydrated. He was told to drink water and to take Tylenol.

36.    After his initial complaints, his symptoms got worse. He reported his continued symptoms to the Defendants. He told them that he felt he needed to go the emergency room. His request was denied. His symptoms continued and got worse. As a result of his symptoms and conditions, on or about October 24, 2019 the Plaintiff was hospitalized at the Erie County

Medical Center. Upon information and belief, he was diagnosed with Hepatitis A. Upon information and belief, he contracted Hepatitis "A" by unknowingly ingesting the virus from objects, food, or drinks provided by the defendants that was contaminated by stool from an infected person, being exposed to unsafe conditions of confinement created by the defendants, including but not limited to their failure to address the Plaintiff's medical needs. Upon information and belief, while he was hospitalized, he was interviewed by a representative from the Erie County Department of Health. During his interview, he was told that the Hepatitis A outbreak was known to the defendants before he complained of his symptoms. Upon further information and belief, a report was made that documented their findings.

37.     That as a result of the aforesaid conduct, plaintiff suffered severe and permanent injuries, has and will continue to incur medical and hospital expenses related to his care, treatment and attempted cure of said injuries and residual effects thereof, has been and may be further subjected to the impairment of his earnings, future earnings and/or future earning capacity as a result of the injuries sustained.

38.     That upon information and belief, the incident herein described and the resultant injuries and damages sustained were caused as a result of the negligence, carelessness, reckless and/or unlawful conduct on the part of the agents, servants and/or employees of all of the defendants herein, and breaches of the above duties of care, more particularly:

-      negligently, carelessly and recklessly failing to maintain and omitting to keep and maintain the Erie County Holding Center and Erie County Correctional Facility in a safe condition, under the circumstances;

-      in failing to appropriately supervise and observe the plaintiff while he was incarcerated;

-      in failing and omitting to ensure the plaintiff was provided and supplied with the necessary supervision and facilities for the

prevention of the plaintiff's injuries, particularly when the defendants had actual and constructive knowledge and information regarding the plaintiff's risk for injury;

- In failing to properly screen and evaluate the plaintiff for the risk of personal injury;

- negligently, carelessly and failing and omitting to train employees, including, but not limited to the screening of inmates for risk of injury;

- causing, allowing and permitting untrained employees, including but not limited to its supporting staff to screen inmates for risk of injury;

- negligently, carelessly and recklessly failing and omitting to provide persons such as the plaintiff with any notice or warning of the lack of knowledge of the staff of the defendants;

- causing, allowing and permitting untrained personnel to the needs of the inmates;

- negligently, carelessly and recklessly supervising its employees performance of their duties;

- failing and omitting to ensure the plaintiff was provided and supplied with the necessary medical attention;

- failing and omitting to have adequate and comprehensive policies, procedures and/or guidelines established and in place to prevent the lack of acceptable medical care to inmates;

- failing to follow those policies, procedures and/or guidelines already in place at the time of the occurrence herein;

- Their failure to meet their responsibility for the plaintiff's safety and general well being;

- Their failure to provide the plaintiff with reasonably safe conditions of confinement;

- Their failure to provide the plaintiff with adequate medical care;

- Showing a deliberate indifference to the plaintiff's serious medical needs that constituted an unnecessary and wanton infliction of pain contrary to contemporaneous standards of decency and violated the Eighth Amendment and Fourteenth Amendments;

- Their failure or refusal to obtain and provide the plaintiff with medical care to address his serious medical needs;

- Their failure to address the plaintiff's health problems that were sufficiently imminent and sure or very likely to cause serious illness and needless suffering in the next week, month, or year;

- Their failure to provide the Plaintiff with environmental conditions that did not pose serious risks to his health and safety, including deficient sanitation;

- Their failure to adequately identify, treat, contain, control and manage diseases, infections, and viruses;

- In their failure to provide the plaintiff with continual observation and continuous treatment and care in order to protect him from harm;

- In their inadequate administration of medication;

- Their failure to meet generally accepted correctional standards for the management of communicable diseases in correctional facilities;

- Failing to follow those policies, procedures and/or guidelines already in place at the time of the occurrence herein;

- In their failure to identify, test, treat and manage diseases;

- In their failure to develop and implement policies and procedures to ensure adequate cleaning and maintenance of the facilities with meaningful inspections processes and documentation; and

- That the Defendants were otherwise negligent, careless and reckless.

39.    That defendants affirmatively created the dangerous and defective condition described herein, that included but is not limited to, providing unsafe conditions of confinement of which the plaintiff was exposed leading to his illness, their failure to provide the plaintiff with adequate and sanitary food, and medical and mental health care, in failing to address his serious

medical and mental health needs, and creating conditions of which the Plaintiff was exposed that posed a serious risk to his health and safety.

40.     The defendants also affirmatively created the dangerous and defective condition described herein placing the defendants JOHN DOES 1-10, the individually named defendants, and representatives of SHC SERVICES, INC., in a position to cause foreseeable harm to the plaintiff,  that the plaintiff would have been spared had they used reasonable care in making their decision regarding the hiring and retention of the aforementioned defendants JOHN DOES 1-10, individually named defendants,  and representatives of SHC SERVICES, INC.

41.     That the defendants herein had actual and constructive knowledge of the defective condition described herein.  They had actual and constructive knowledge of a Hepatitis A outbreak. Upon information and belief, the   Erie County Commissioner of Health, Dr. Gale Burstein  made a statement that "so far in 2019, the Erie County Department of Health has received reports of 44 hepatitis A cases in Erie County. Some of those cases were among individuals who were incarcerated at the Erie County Correctional Facility in Alden or the Erie County Holding Center."

42.     That the conduct of all of the defendants herein amounted to more than mere negligence, and instead, amounted to deliberate indifference to the plaintiff's safety.

43.     That the defendants provided grossly inadequate care and, in fact, took no measures to provide for plaintiff's safety for an unreasonable and inordinate period of time.

44.     That the negligence of the defendants, and his resultant injuries, produced physical injury to the plaintiff.

45.    That as a result of the foregoing, the plaintiff has sustained general and special damages in an amount that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

## NEGLIGENT TRAINING AND SUPERVISION:

46.    Plaintiff repeats and restates the allegations contained in the foregoing paragraphs of this Complaint as if the same were more fully set forth herein.

47.    That at all times mentioned herein the defendants JOHN DOES 1-10, individually named individuals herein, representatives of SHC SERVICES, INC., and individually named defendants were employees, contractors, and agents of defendants COUNTY OF ERIE.

48.    That the defendants COUNTY OF ERIE, owed a duty to the plaintiff to ensure the competence of their employees including the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC., and by using reasonable care in selecting and hiring its employees such as the defendants JOHN DOES 1-10, the individually named defendants above, and representatives of SHC SERVICES, INC., they had a further duty of care to investigate the background of its employees, and review their backgrounds, competency, temperament, and propensities outlined herein, especially in light of the particular risk or hazard that the breach of that duty imposed to the public and on inmates.

49.    That when the incompetency, temperament and propensities outlined herein of the defendant JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC. was known or should have been known to the defendants COUNTY OF ERIE, herein at the time of their hiring.

50.    That defendants COUNTY OF ERIE failed to take reasonable steps to ascertain whether or not the defendants JOHN DOES 1-10, individually named individuals herein,

and representatives of SHC SERVICES, INC. were emotionally capable of performing such duties and did not have a propensity towards failing to adequately identify, treat, contain, control and manage diseases, infections, and viruses; to care for ill inmates;  to provide the plaintiff with environmental conditions that posed  serious risks to his health and safety, including deficient sanitation, food storage, ventilation, and pest infestation; that were situations that they were likely to encounter or administer, and they did not administer well known standardized tests to ascertain the defendants  JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC.'s personalities.

51.    The Defendants COUNTY OF ERIE failed train and supervise the defendants JOHN DOES 1-10, individually named individuals herein, and  representatives of SHC SERVICES, INC. in the needs and care of ill inmates, and to implement a policy and  system for the care of ill inmates, to adequately identify, treat, contain, control and manage diseases, infections, and viruses; to provide the plaintiff with environmental conditions that did not pose  serious risks to his health and safety, including providing safe  sanitation, food storage, ventilation, and pest control. These systematic deficiencies amounted to a deliberate indifference to the serious medical needs of the plaintiff who was held in the custody care and control of the defendants.

52.    That the failure of defendants COUNTY OF ERIE to investigate the negligent training and supervision of the defendants  JOHN DOES 1-10 , individually named individuals herein, and  representatives of SHC SERVICES, INC., and other employees placed them in a position to commit foreseeable harm and was the proximate cause of the tortuous acts committed upon plaintiff and the damages suffered by the plaintiff on account of such acts. The defendants personal involvement in the violation of the plaintiff's rights was through their gross negligence in the supervision of  defendants  JOHN DOES 1-10, individually named individuals herein, and

representatives of SHC SERVICES, INC., that include the medical and security staff, whose actions and omissions led directly to the unconstitutional denial of the plaintiff's right to medical care and a safe and sanitary environment. The defendants consistent and widespread practices led to the failure of the training and supervision of the defendants JOHN DOES 1-10 , individually named individuals herein, and representatives of SHC SERVICES, INC. In other words, the defendants deliberate indifference to training of their employees and their policies regarding that was the proximate cause of the violations outlined herein of the plaintiff's constitutional rights.

53.     The defendants made a deliberate choice from among various alternatives not to train the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC. Such a deliberate choice was shown in light of the duties assigned to specific officers or employees the need for more or different training was so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the defendants can reasonably be said to have been deliberately indifferent to the plaintiff's needs. The defendants also knew with a moral certainty that the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC. would be required to care for inmates like the plaintiff.

54.     That by reason of the foregoing, the plaintiff suffered severe, painful, permanent, and personal injuries; was rendered sick, sore, lame and disabled, and suffered loss of enjoyment of quality of life.

## NEGLIGENT HIRING:

55.     Plaintiff repeats and restates the allegations contained in the foregoing paragraphs of this Complaint as if the same were more fully set forth herein.

56.    That on at all times mentioned herein, the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC. were employees, contractors, and agents of defendants COUNTY OF ERIE.

57.    That the defendants COUNTY OF ERIE, owed a duty to the plaintiff to ensure the competence of their employees including the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC., and by using reasonable care in selecting and hiring its employees such as the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC.; they had a further duty of care to investigate the background of its employees, and review their backgrounds, competency, temperament, and propensity towards failing to adequately identify, treat, contain, control and manage diseases, infections, and viruses; to care for ill inmates; to provide the plaintiff with environmental conditions that posed serious risks to his health and safety, including deficient sanitation, food storage, ventilation, and pest infestation; that were situations that they were likely to encounter or administer, and their failure to implement well known standardized tests to ascertain the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC. personalities, especially in light of the particular risk or hazard that the breach of that duty imposed to the public and on inmates.

58.    That the incompetency, temperament, and propensity mentioned above of the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC. was known or should have been known to the defendants at the time of their hiring.

59.    That defendants COUNTY OF ERIE failed to take reasonable steps to ascertain whether or not the defendants JOHN DOES 1-10, individually named individuals herein,

and representatives of SHC SERVICES, INC. were emotionally capable of performing such duties and did not have the propensities mentioned above, and that they would be put into situations that they were likely to encounter or administer, or well known standardized tests to ascertain the defendants' JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC. personalities.

      60.    That the failure of defendants COUNTY OF ERIE    to investigate the negligent hiring and retention and supervision of the defendants JOHN DOES 1-10, individually named individuals herein, representatives of SHC SERVICES, INC., and other employees placed them in a position to commit foreseeable harm was the proximate cause of the tortuous acts committed upon plaintiff and the damages suffered by the plaintiff on account of such acts; they breached their duty to use reasonable care in employment, training and supervision of its employees to find out whether they were competent to do their work without danger of harm to others; they failed in their duty because they knew or should have known that their employees, defendants JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC., were incompetent and/or had vicious propensities; a bad disposition; and/or were given to horseplay; and they failed to use reasonable care to correct or remove them; and they failed in that duty because they knew of facts that would lead a reasonably prudent person to conduct an investigation which could have uncovered the information about the employee and failed to do so; they placed the defendant JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC. in a position to cause the foreseeable harm to the plaintiff that would most probably would have been spared had they use reasonable care in making its decision regarding the hiring and retention of them.

61.     That by reason of the foregoing, the plaintiff suffered severe, painful, permanent, and personal injuries; was rendered sick, sore, lame and disabled, and suffered loss of enjoyment of quality of life.

## **NEGLIGENT RETENTION:**

62.     Plaintiff repeats and restates the allegations contained in the foregoing paragraphs of this Complaint as if the same were more fully set forth herein.

63.     That at all times mentioned herein, the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of  SHC SERVICES, INC. were employees, contractors, and agents of defendants  COUNTY OF ERIE.

64.     That the defendants COUNTY OF ERIE owed a duty to the plaintiff to ensure the competence of their employees including the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of  SHC SERVICES, INC., and by using reasonable care in selecting and hiring its employees such as the defendants  JOHN DOES 1-10, individually named individuals herein,  and representatives of  SHC SERVICES, INC.; they had a further duty of care to investigate the background of its employees, and review their backgrounds, competency, temperament, and propensities mentioned above, especially in light of the particular risk or hazard that the breach of that duty imposed to the public and on inmates.

65.     That the incompetency, temperament, and propensities mentioned above  of the defendants  JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC. was known or should have been known to the defendants at the time of their hiring, training, retention, and supervision.

66.     That the failure of defendants COUNTY OF ERIE  to investigate the negligent hiring and retention  and supervision of the defendants  JOHN DOES 1-10, individually named

individuals herein, representatives of SHC SERVICES, INC., and other employees placed them in a position to commit foreseeable harm and was the proximate cause of the tortuous acts committed upon plaintiff and the damaged suffered by the plaintiff on account of such acts; they breached their duty to use reasonable care to in employment, training and supervision of its employees to find out whether they were competent to do their work without danger of harm to others; they failed in their duty because they knew or should have known that their employees were incompetent and/or had vicious propensities; a bad disposition; and/or were given to horseplay; and they failed to use reasonable care to correct or remove them; and they failed in that duty because they knew of facts that would lead a reasonably prudent person to conduct an investigation which could have uncovered the information about the employee and failed to do so; they placed the defendant JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC. in a position to cause the foreseeable harm to the plaintiff that would most probably would have been spared had they use reasonable care in making its decision regarding the hiring and retention of them.

67.    That when the incompetency, temperament and propensities outlined herein of the defendant JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC. was known or should have been known to the defendants COUNTY OF ERIE, herein, they continued to be employed by them.

68.    That by reason of the foregoing, the plaintiff suffered severe, painful, permanent, and personal injuries; was rendered sick, sore, lame and disabled, and suffered loss of enjoyment of quality of life.

B.    **VIOLATION OF FEDERAL CIVIL RIGHTS MUNICIPAL LIABILITY: 42 U.S.C.  § 1983:**

**INDIVIDUALLY NAMED  DEFENDANTS:**

69.    Plaintiff repeats and restates the allegations contained in the foregoing paragraphs of this Complaint as if the same were more fully set forth herein.

70.    On October 15, 2019, the Plaintiff reported to GRACE MOKA, RN and JESSICA HALL NP  that he  was  poisoned, that he was freezing but warm to the touch, that he was fatigued, and that he had body aches. He was medically cleared. His Hepatitis went undiagnosed, untreated,  and his symptoms and condition worsened, causing him pain and injury.

71.    On October 18, 2019, the Plaintiff reported to MIKE MCBRIDE, LPN during a sick call that he had cold symptoms. His Hepatitis went undiagnosed, untreated,   and his symptoms and condition worsened, causing him pain and injury.

72.    On October 19, 2019, the Plaintiff reported to JULIA DIBIASE-JOHNSTON, RN  during  a sick call that he had a fever, an infection, had no strength, was in pain from head to toe, and that he felt like he was poisoned. It was noted in Plaintiff's medical record from this visit that his urine was very dark and stringy/slimy.  His Hepatitis went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury.

73.    On October 21, 2019, the Plaintiff reported multiple complaints during a sick call to LYDIA TORRES, RN.  His Hepatitis went undiagnosed, untreated,  and his symptoms and condition worsened, causing him pain and injury.

74.    On October 21, 2019, the Plaintiff reported to ALLISON PARKER that he was having ongoing malaise, dark urine, body aches, and pale stool. It was also noted that Plaintiff was seen on 2 prior occasions related to ongoing concerns. His Hepatitis went undiagnosed, untreated,  and his symptoms and condition worsened, causing him pain and injury.

75.     On October 22, 2019, the Plaintiff reported to HEIDI CORNELL, NP  that he was fatigued, that he had body aches, that he had a fever, that his urine wad discolored, that he was having pain in his right and left lower abdomen, abdominal bloating, including but not limited to, cream colored lose stool. Plaintiff reported that he  noticed his urine was discolored , that his urine was tea colored, and that his urine felt weird. He reported he was experiencing cold sweats and a decreased appetite. His Hepatitis went undiagnosed, untreated,  and his symptoms and condition worsened, causing him pain and injury.

76.     On October 23, 2019, the Plaintiff was evaluated by DEBRA WESTFIELD, RN for abdominal pain, decreased appetite, iscteric urine, fever, and fatigue. His Hepatitis went undiagnosed, untreated,  and his symptoms and condition worsened, causing him pain and injury.

77.     Prior to his hospitalization, the Plaintiff also made other complaints of a similar  nature to JOHN DOES-1-10 individuals/officers responsible for supervising the Plaintiff and involved in the within incident, JOHN DOES-1-10 said names being fictitious, but intended to be the individuals/medical professionals involved in the within incident, those responsible for providing  medical care to the Plaintiff while he was incarcerated including but not limited to members of the  Erie County Sheriff's Office Correctional Health Unit  and Erie County Department of Mental Health Services  responsible for providing medical care to the  Plaintiff while he was incarcerated; and to other representatives of SHC SERVICES, INC and COUNTY OF ERIE.

78.     Plaintiff was admitted to the Erie County Medical Center (ECMC) emergency department on or about October 24, 2019.

79.     The above shows that the individual Defendants deliberately disregarded the serious risk of harm that Hepatitis A posed to Plaintiff and his well-being.

**FAILURE TO TREAT:**

80.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint as if the same were more fully set forth herein.

81.     That upon information and belief, at all times hereinafter mentioned, defendants hired employees, agents, servants and contractors that held themselves out as duly qualified to render proper and adequate medical treatment and services, including providing physical examinations and medical care to those persons under the care and custody of the defendants, including plaintiff.

82.     That upon information and belief, at all times hereinafter mentioned, defendants, through their employees, agents, servants and contractors, failed to render medical evaluation and attention to the plaintiff.

83.     That upon information and belief, at all times hereinafter mentioned, defendants, through their employees, agents, servants and contractors, failed to provide adequate and essential medical evaluation and care and treatment to the plaintiff; they failed to address the plaintiff's serious medical and mental health needs; they acted with deliberate indifference to the plaintiff because he was in need of medical care and they failed, or refused to, obtain such care; they failed to protect him from health problems that were sufficiently imminent and sure or very likely to cause him serious illness and needless suffering.

84.     That by reason of the carelessness, negligence and recklessness and medical malpractice of the defendants through their employees, agents, servants and contractors, in the medical care and treatment and services rendered to and for plaintiff, plaintiff was caused to suffer severe and great bodily injury with accompanying pain and suffering and sustained bodily and emotional injuries of a permanent nature.

85.     That the policies and procedures, and the willful and wanton conduct of defendants, their agents, servants and employees, reflect a reckless and careless disregard and deliberate indifference for the rights of the plaintiff to receive proper and adequate medical evaluation and attention so as to merit an award of damages against defendants.

86.     That the defendants' actions indicate a willful misconduct, wantonness and want of care which have raised the presumption of conscious indifference to the consequences to plaintiff, thus entitling plaintiff to an award of damages.

87.     That the amount of damages sought in this action exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

## MONELL CLAIM-COUNTY OF ERIE AND SHC SERVICES, INC:

88.     At all times hereinafter mentioned, the Defendant COUNTY OF ERIE and SHC SERVICES, INC had custody care and control over the plaintiff.

89.     The Deprivation of Plaintiff's constitutional rights outlined herein were caused in party by a COUNTY OF ERIE and/or SHC SERVICES, INC   governmental custom, policy, and usage. The policy and custom mentioned above is demonstrated through a pattern of similar incidents and inadequate responses to those incidents.

90.     The examples below show  acquiescence by  the  COUNTY OF ERIE and SHC SERVICES, INC  in a well  settled custom, in other words they knew and  should have known similar unlawful conduct in the past and did not take correct active/respond appropriately to prevent this incident. The   COUNTY OF ERIE and SHC SERVICES, INC knew of the custom and acquiesced in it.

- Case 1:09-cv-00849-WMS-JJM-filed in the Western District of New York on 9/30/09: United States v. Erie County, et al: A CRIPA investigation of the Erie County Holding Center and Erie County Correctional Facility revealed that:

  - that the County failed to provide adequate medical care, protection from harm, and a safe and sanitary environmental conditions (Document 1 P. 23-24);

  - that the medical care provided at the  Erie County Holding Center and Erie County Correctional Facility fell below the constitutionally required standards of care, that included the lack of on-site health care administrators to manage health care facilities at the facilities (Document 1-2 P. 7);

  - that the administration of health care services at  Erie County Holding Center and Erie County Correctional Facility was inadequate, as there are no quality improvement programs or monitoring procedures in place to internally assess the quality of health care at the facilities (Document 1-2 P. 8);

- that the Erie County Holding Center and Erie County Correctional Facility procedures and policies fails to provide staff with operational guidance on quality of care (Document 1-2 P. 8);

- that inmates at the Erie County Holding Center and Erie County Correctional Facility suffering from serious medical conditions require continual observation and consistent treatment and care in order to protect them from harm, and noted examples to illustrate that inmates at those facilities are not receiving adequate medical care (Document 1-2 P. 10);

- that the the Erie County Holding Center and Erie County Correctional Facility fail to adequately treat, contain, and manage infectious disease; that their management of infectious diseases deviates from generally accepted correctional medical standards, that is a dangerous and places inmates, staff, and the community at unnecessary risk of serious health problems (Document 1-2 P. 12);

- that generally accepted correctional standards for the management of communicable diseases in correctional facilities requires the development of a site management plan, that at a minimum should address the screening, diagnosis, and treatment of Hepatitis; that Erie County Holding Center and Erie County Correctional Facility have no written exposure plan that has resulted in deficiencies related to the containment and treatment of TB and MRSA (Document 1-2 P. 12);

- it was noted that the Erie County Holding Center and Erie County Correctional Facility failed to identify symptoms clinically associated with a MRSA infection and that they received numerous reports from inmates held at those facilities who exhibited commonly known signs of MRSA and did not receive treatment (Document 1-2 P. 13);

-   it was noted that jail medical staff not only fail to screen inmates when they arrive at the facility and provide adequate surveillance of infectious diseases; medical staff also do not provide discharge planning, therefore providing no monitoring for inmates with communicable infectious diseases, understood to be a basic part of generally accepted correctional practices (Document 1-2 P. 13);

-   that the Erie County Holding Center has severe environmental health and safety problems at numerous levels of operation; that despite repeated NYSCC citations for poor sanitation and maintenance, the Erie County Sheriff's Office has failed to correct the problems (Document 1-2 P. 13);

-   In 2007, NYSCC found maintenance and sanitation inadequate throughout the Erie County Holding Center, exposing inmates and staff to unhealthy and unsafe conditions (Document 1-2 P. 13);

- State regulators cited the Erie County Sheriff's Office on several occasions for overall poor sanitation, finding sanitation conditions deplorable with walls covered with toothpaste and cell bars covered in towels and sheets (Document 1-2 P. 13);

- NYSCC staff found significant accumulation of styrofoam food trays and clutter in the cells, that was noted as a serious problem as it could attract insects and other vermin, as well as allow for the spread of disease  (Document 1-2 P. 14);

- it was noted that maintenance and sanitation are categorically inadequate throughout the facility, exposing inmates and staff to unhealthy and unsafe environments as a result (Document 1-2 P. 14);

- it was noted that in April and August of 2007, the NYSCC found the Erie County Holding Center supervisors were not holding staff accountable for the sanitation of their assigned housing areas; critical sanitation deficiencies included the failure of jail staff to properly secure sanitation equipment and supplies when not in use; and that the Erie County Sheriff's Office was cited for poor facility maintenance (Document 1-2 P. 14);

- it was noted that laundry services at the Erie County Holding Center and Erie County Correctional Facility were similarly inadequate; that as of August of 2007, inmates were required to either wash their facility issued and/or personally owned undergarment in a cell sink or arrange the pick up and washing of these items from family or friends, that posed a serious problem as soiled and/or improperly washed clothing can retain bacteria and other contagion that can cause infection or spread of disease  (Document 1-2 P. 14).

- <u>The New York State Commission of Correction v. Timothy B. Howard,</u>
<u>Individually and in his Capacity of Sheriff of Erie County, and Erie County</u>
Index Number: 803433/2021: Filed in Erie County Supreme Court on March
17, 2021:

  - the above Article 78 Proceeding was based in part on the
    COUNTY OF ERIE'S failure to comply with Commission
    regulations, Guidelines, and Directives (NYSCEF Doc. No.
    1 P. 8 Paragraph 33);

  - the above Article 78 Proceeding was also based on the
    COUNTY OF ERIE'S failure to internally review and assess
    all incidents of a serious or potentially problematic nature and
    report incidents to the Commission (NYSCEF Doc. No. 1 P.
    19 Paragraph 98);

  - the above Article 78 Proceeding was also based on the
    COUNTY OF ERIE'S failure to timely or properly report
    incidents to the commission pursuant to the requirements
    outlined in the commission's Reportable Incident Guideline
    for County Correctional Facilities (NYSCEF Doc. No. 1 P. 19
    Paragraph 99);

- the Petitioner attached the Reportable Incident Manual for County Jails that noted a general reportable incident category as being Contagious Illness that was defined as an infectious illness or disease capable of being transmitted by environmental condition or human contact  (NYSCEF Doc. No. 3);

- the Petitioner attached the Worst Offenders Report: The most problematic local correctional facilities of New York State from the Commission of Correction; the above contained a report on the Erie County Holding Center and Correctional Facility, the facility evaluation included:

    - Food Services-Portion size not consistent with published menu, Menus not certified by dietician (NYSCEF Doc. No. 3 P. 57);

    - General Facility Sanitation: Facility staff did not have 24-hour access to sanitation equipment and supplies (NYSCEF Doc. No. 3 P. 57);

- Kitchen Sanitation: During the first site visit, the kitchen at the Holding Center was found to be deficient in acceptable sanitation standards (NYSCEF Doc. No. 3 P. 58);

- Prisoner Personal Hygiene: Laundry: At the Holding Center, laundry services were only provided once per week, not twice as required (NYSCEF Doc. No. 3 P. 58);

- an inmate mortality investigation was noted-cause of death-Traumatic Asphyxia; Issues noted-Medical and Mental Health Care; inadequate management plan by Erie County Deputies for inmates with mental illness in an acute crisis state; failure by the Erie County Mental Health clinicians to recognize the individuals acute psychosis and immediately referring him to a psychiatric provider (NYSCEF Doc. No. 3 P. 55-56);

- an inmate mortality investigation was noted-cause of death-Perforated Ulcer; Erie County Nursing Staff failed to perform an adequate medical assessment on the individual; Erie County jail physician failed to recognize the seriousness of the individuals illness and failed to order a hospital evaluation and treatment; Erie County medical providers failed to recognize the individual had continued unresolved complaints (NYSCEF Doc. No. 3 P. 55-56);

- an inmate mortality investigation was noted-multiple medical mental health and minimum standard violation issues-issues show serious lapses in both medical and mental health care; individual languished in a cell for over 10 days in an acute state of psychosis without any crisis psychiatric intervention or attempts to emergently hospitalize. (NYSCEF Doc. No. 3 P. 55-56)

91.     That said defendants were acting under the color of state law, and their conduct did cause the deprivation of plaintiff's Constitutional rights by failing to provide an environment free from harm; and their conduct caused the Plaintiff's injuries and damages.

92.     The defendants conduct described above deprived the Plaintiff of the following Constitutional rights:

- Their failure to assume any responsibility for the plaintiff's safety and general well being;

- Their failure to provide the plaintiff with reasonably safe conditions of confinement;

- Their failure to provide the plaintiff with adequate food, clothing, shelter, and medical care in violation of the Eighth and Fourteenth Amendments;

- Their failure to protect the plaintiff from present, continuing, and future harm in violation of the Eighth Amendment and Fourteenth Amendment;

- Their failure to provide the plaintiff with access to adequate medical and mental health care in violation of the Eighth Amendment and Fourteenth Amendments;

- The defendants had a deliberate indifference to the plaintiff's serious medical needs that constituted an unnecessary and wanton infliction of pain contrary to contemporary standards of decency in violation of the  Eighth Amendment and Fourteenth Amendments;

- In punishing and exposing the plaintiff to conditions and practices not reasonably related to a legitimate governmental objective of safety, order, and security in violation of the Fourteenth Amendment;

- Their failure to address the plaintiff's serious medical and mental health needs and they acted with deliberate indifference to those needs because the plaintiff was in need of serious medical care and they failed and refused to obtain and provide the plaintiff that care;

- Their deliberate indifference to the plaintiff's serious medical needs constituted unnecessary and wanton infliction of pain in violation of the Eighth Amendment and Fourteenth Amendment;

- Their failure to protect the plaintiff whose health problems were sufficiently imminent and sure or very likely to cause a serious illness and needless suffering in the next week, month, or year;

- In their failure to provide the plaintiff with environmental conditions that did not pose serious risks to his health and safety, including deficient sanitation, food storage, ventilation, and pest infestation in violation of the Due Process Clause of the Fourteenth Amendment;

- In their protracted failure to provide the plaintiff with safe prison conditions;

- The defendants had knowledge that the plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate that harm, and  they acted with deliberate indifference to his health and safety; that constituted an unnecessary and wanton infliction of pain proscribed by the Eighth Amendment;

- They violated the plaintiff's right to be free from deliberate indifference to his medical needs;

- In that they delayed the plaintiff's needed medical care to address his life threatening and fast degenerating conditions that amounted to cruel and unusual punishment;

- The defendants knew and disregarded the excessive risk to the plaintiff's health and safety because they were both aware of the facts from which the inference could be drawn that a substantial risk of harm existed, and they also drew that inference; including but not limited to that

- Their actions violated the Cruel and Unusual Punishment Clause of the Eighth Amendment.

93.    The defendants had a subjective awareness that their actions would subject the plaintiff to a substantial risk of harm. The medical needs to which the defendants were deliberately indifferent were serious. The defendant's delay in treating the plaintiff's serious medical conditions constituted a deliberate medical indifference. The Plaintiff was harmed from the defendant's delay in his medical care.  The defendant's delay/failure to treat the plaintiff's condition

resulted in his significant injuries. A reasonable doctor or patient would find the plaintiff's injury worthy of comment and treatment. The plaintiff's conditions also significantly affected his daily activities and he had chronic and substantial pain.

94.     The defendants actions in allowing the deprivation of which he is complaining of was sufficiently serious to constitute cruel and unusual punishment and their actions amounted to a deliberate indifference. The defendant's indifference offended evolving standards of decency in violation of the Eighth Amendment. The plaintiff's  condition might have produced death, and did produce degeneration, and produced extreme pain.

95.     The plaintiff's deprivation is objectively sufficiently serious and resulted in the denial of minimal civilized measure of life's necessities. The plaintiff's incarcerated conditions posed a substantial risk and caused serious harm to the plaintiff. The plaintiff's pain caused by the defendants was an unnecessary and wanton infliction of pain. The defendants had a sufficiently culpable state of mind that was one of deliberate indifference to the plaintiff's health and safety.

96.     The plaintiff's rights that were violated by the defendants were clearly established in a particularized sense so that a reasonable official would know  that the actions described herein violated the plaintiff's rights. The defendants were aware of facts from which an inference could be drawn that a substantial risk of serious harm to the plaintiff existed, and they also drew that inference.

97.      The deprivation of the plaintiff's rights resulted from  deliberate decisions of the defendants. Their conduct was reckless and grossly negligent.

98.     The conduct complained of by the plaintiff was undertaken pursuant to an official policy and a governmental custom. The above mentioned customs and practices caused the plaintiff to be subjected to the denial of his constitutional rights.

99.    The defendants' policies, customs, and practices of described above were the proximate causes of the violation of the plaintiff's rights herein pursuant to the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, in addition to 42 U.S.C. Section 1983.

100.    Upon information and belief, overlooking, excusing, or disregarding the wrongful conduct of the defendants herein, have adopted a rule or unwritten rule, or defendants have established a policy or custom of deliberate indifference to unlawful conduct as complained of herein.

101.    The defendants' failure to take measures to train and supervise its correctional staff was a proximate cause of the violations alleged in the complaint herein.

102.    That all enumerated defendants were acting under color and authority of the Law, and were acting in a capacity as agents, servants and employees of defendants.

103.    That the entire course of conduct of defendants as enumerated above was in violation and deprived the plaintiff of his federally secured Constitutional rights and the rights contours were sufficiently definite that any reasonable official in the defendants shoes would have understood that they violated it.

104.    That as a result of the foregoing, the plaintiff has sustained general and special damages in an amount that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

105.    That the plaintiff is entitled to an award of attorneys fees for the prosecution of the within action.

**C. AS AND FOR A SEPARATE AND DISTINCT
CAUSES OF ACTION AGAINST ALL
DEFENDANTS, PLAINTIFF ALLEGES UPON
INFORMATION AND BELIEF:**

**CONSPIRACY:**

106.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint as if the same were more fully set forth herein.

107.    That defendants, together with their agents, servants and/or employees acted within their capacities and of their color of law, having conspired together and with others, reached a mutual understanding and acted to undertake a course of conduct that violated the plaintiff's civil rights as outlined above.

108.    As a direct and proximate cause of the result of the conspiracy between the defendants and others as aforesaid, plaintiff was deprived of his constitutional rights as outlined herein.

109.    Upon information and belief, the amount of damages sought by the plaintiff against the defendants in this action exceed the jurisdictional limits of all lower courts which would otherwise have jurisdiction, and the plaintiff seeks damages against the defendants in an amount to be proven and determined at the trial of this action.

**DEMAND FOR PUNITIVE DAMAGES**

110.    The actions of the defendants herein were extreme and outrageous, and shock the conscience of a reasonable person.  Consequently, an award of punitive damages is appropriate to punish the defendants for their deliberate indifference and malice towards the plaintiff and his rights as outlined above.

111.    As such, plaintiff demands judgment against defendants in an amount to be determined at trial.

**WHEREFORE**, the plaintiff respectfully the following forms of relief:

A)      Compensatory and special damages against the defendants and each of them

        jointly and severally, in an amount to be determined at trial;

B)      Punitive Damages against all individual defendants in an amount to be

        determined by a properly instructed jury;

C)      Costs, disbursements, and attorneys' fees as stated above;

D)      Interest on the aforementioned judgments; and

E)      Such other and further relief that the Court deems just and proper.

Dated:      July 19, 2021
            Hamburg, New York

                                    **SHAW & SHAW P.C.**


                                    Blake Zaccagnino
                                    Attorneys for Plaintiff
                                    4819 South Park Avenue
                                    Hamburg, New York 14075
                                    (716) 648-3020 Telephone
                                    (716) 648-3730 Fax