UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JAMES BUSCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COUNTY OF ERIE, | ) | |
| GRACE MOKA, RN, | ) | |
| JESSICA HALL, NP, | ) | Case No. 1:20-cv-01515 |
| MIKE MCBRIDE, LPN, | ) | |
| JULIA DIBIASE-JOHNSTON, RN, | ) | |
| LYDIA TORRES, RN, | ) | |
| ALLISON PARKER, | ) | |
| HEIDI CORNELL, NP, | ) | |
| DEBRA WESTFIELD, RN, | ) | |
| JOHN DOES 1-10, | ) | |
| SHC SERVICES, INC., and | ) | |
| JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**
(Doc. 24)

Plaintiff James Busch brings this suit against Defendants County of Erie; Grace Moka, RN; Jessica Hall, NP; Mike McBride, LPN; Julia DiBiase-Johnston, RN; Lydia Torres, RN; Allison Parker; Heidi Cornell, NP; Debra Westfield, RN;[1] John Does 1-10, intended to be the individuals/officers responsible for supervising the Plaintiff (the "John Doe Deputies"); SHC Services, Inc.; and John Does 1-10, intended to be the individuals/medical professionals responsible for providing medical care to Plaintiff while he was incarcerated (the "John Doe Medical Professionals"). Plaintiff's claims

---

[1] Defendants Moka, Hall, McBride, DiBiase-Johnston, Torres, Parker, Cornell, and Westfield are named in both their individual and official capacities.

arise from his contraction of Hepatitis A[2] while at the Erie County Holding Center and the Erie County Correctional Facility and Defendants' alleged deliberate indifference in providing him care in response to an allegedly known Hepatitis A outbreak at those facilities.

On July 13, 2021, the court granted in part and denied in part Defendants'[3] first motion for judgment on the pleadings, dismissing Plaintiff's negligence claim against County of Erie to the extent that claim is based on *respondeat superior*; Plaintiff's 42 U.S.C. § 1983 claim against all defendants except SHC Services, Inc.; Plaintiff's *respondeat superior* and vicarious liability claim; and all claims against Erie County Holding Center, Erie County Correctional Facility, and the Erie County Sheriff's Department. The court granted Plaintiff leave to amend.

On July 23, 2021, Plaintiff filed a three-count Amended Complaint, alleging negligence (Count I); violations of 42 U.S.C. § 1983 (Count II); and conspiracy to deprive him of his constitutional rights (Count III). Pending before the court is the Moving Defendants'[4] second motion for judgment on the pleadings (Doc. 24.) Pursuant to a stipulated extension of time to respond, Plaintiff opposed the motion on December 21, 2021 (Doc. 28). The Moving Defendants did not file a reply.

Plaintiff is represented by Blake Joseph Zaccagnino, Esq. The Moving Defendants are represented by Anthony B. Targia, Esq. SHC Services, Inc. is represented by Jason T. Britt, Esq., and Julie M. Bargnesi, Esq.

I.   **Allegations in the Amended Complaint.**

Plaintiff is a resident of the State of New York. Beginning on August 8, 2019, Plaintiff was in custody and under the supervision of Defendants and housed in the Erie

---

[2] Plaintiff alleges that "[u]pon information and belief, he was diagnosed with Hepatitis A." (Doc. 17 at 10, ¶ 36.)

[3] Plaintiff's original complaint named Defendants County of Erie, John Doe Deputies, SHC Services, Inc., and John Doe Medical Professionals. It also named other parties who have since been dismissed.

[4] All Defendants except SHC Services, Inc. join in the pending motion. Defendant SHC Services, Inc. also did not join in the first motion for judgment on the pleadings.

County Holding Center and the Erie County Correctional Facility, which are controlled by County of Erie. Plaintiff does not allege whether he was incarcerated pre-trial or post-conviction. Defendant SHC Services, Inc. is alleged to be a foreign corporation responsible for providing medical care to Plaintiff while he was incarcerated. Defendants Moka, Hall, McBride, DiBiase-Johnston, Torres, Parker, Cornell, and Westfield are allegedly employees of County of Erie and/or SHC Services, Inc.

Plaintiff claims that in 2019, while he was in the Erie County Holding Center and the Erie County Correctional Facility, there was a known Hepatitis A outbreak at each facility. According to an October 8, 2019 press release from the Erie County Department of Health, symptoms of Hepatitis A include fatigue, abdominal pain and discomfort, low-grade fever, dark urine, and yellowing of the skin and eyes. The onset of symptoms typically appears between fifteen and fifty days following exposure.

During the last two weeks of October 2019, Plaintiff began to complain of symptoms associated with Hepatitis A, including fatigue, abdominal pain and discomfort, a fever, dark urine, and yellowing of the skin and eyes. Plaintiff alleges that between October 15, 2019 and October 23, 2019, he reported his symptoms to Defendants Moka, Hall, McBride, DiBiase-Johnston, Torres, Parker, and Cornell and was evaluated by Defendant Westfield for his symptoms, yet "[h]is Hepatitis went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury." (Doc. 17 at 21-22, ¶¶ 70-76). Plaintiff claims he "made other complaints of a similar nature" to John Doe Deputies and John Doe Medical Professionals. *Id.* at 22, ¶ 77.

Plaintiff alleges that, in response to his complaints, "[h]e was told that he was dehydrated" and "to drink water and to take Tylenol." *Id.* at 7, ¶ 24. Following his initial report of symptoms, his condition worsened. He reported his worsening symptoms to Defendants and told them he needed to go to the emergency room. "His request was denied." *Id.* at 7, ¶ 25.

On October 23, 2019, Plaintiff was hospitalized at the Erie County Medical Center and, upon information and belief, was diagnosed with Hepatitis A. Plaintiff remained in the hospital until November 1, 2019. He alleges that he unknowingly contracted the virus

from objects, food, or drinks provided by Defendants which were "contaminated by stool from an infected person[.]" *Id.* at 8, ¶ 26. During his hospitalization, upon information and belief, Plaintiff was interviewed by a representative from the Erie County Department of Health, who disclosed that the Hepatitis A outbreak was known to Defendants prior to Plaintiff's reports of symptoms. Plaintiff further alleges that he sustained "severe and permanent injuries" as a result of Defendants' conduct and "will continue to incur medical . . . expenses related to his care, treatment and attempted cure[.]" *Id.* at 10, ¶ 37. As a result of his injuries, he alleges his earning capacity has been impaired.

In Count I, Plaintiff alleges that while he was incarcerated, Defendants negligently failed to provide him with adequate medical and mental health care by, among other things, failing to properly supervise and observe him; improperly screening and evaluating his risk; allowing untrained employees to screen inmates for risk of injury; and negligently hiring, training, supervising, and retaining employees.

In Count II, he asserts that Defendants violated 42 U.S.C. § 1983 by failing to adequately treat him and by delaying his medical care. He further asserts a *Monell* claim against County of Erie and SHC Services, Inc. for their alleged custom or policy of allowing unsanitary conditions and failing to provide adequate treatment.

In Count III, Plaintiff asserts that Defendants conspired "together with their agents, servants and/or employees . . . to undertake a course of conduct that violated [his] civil rights[.]" (Doc. 17 at 39, ¶ 107.) He requests punitive damages on all counts based on Defendants' alleged deliberate indifference and malice toward him.

## II.    Conclusions of Law and Analysis.

The Moving Defendants seek dismissal of Count II because Plaintiff's allegations are conclusory and fail to plausibly state a claim. In addition, the Moving Defendants seek dismissal of all negligence claims against County of Erie based on a theory of *respondeat superior*; all negligence claims under § 1983; and *Monell* claims against County of Erie. The Moving Defendants argue these claims must be dismissed as res judicata because of the court's earlier dismissal of them without prejudice but also

4

incorporate the arguments for their dismissal made in their briefing of their first motion for judgment on the pleadings. As Plaintiff correctly points out, a dismissal without prejudice does not have preclusive effect. *See Camarano v. Irvin*, 98 F.3d 44, 47 (2d Cir. 1996) ("It is well established that a dismissal without prejudice has no res judicata effect on a subsequent claim.").

The Moving Defendants argue that all claims against the "Erie County Sheriff's Office[], Erie County Correctional Facility, Erie County Holding Center, and Timothy B Howard and Thomas Dina, as Erie County Sheriff and Superintendent of Jails[,] respectively, must be dismissed as outside the applicable limitations period." (Doc. 24-2 at 2.) Because those persons are not named as defendants in the Amended Complaint, the Moving Defendants' motion to dismiss claims against them based on the statute of limitations is DENIED AS MOOT.

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (alterations adopted) (internal quotation marks and citation omitted). To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff must allege sufficient facts to "nudge[] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

### A.   Whether Plaintiff's § 1983 Claims Against the Individual Defendants Should Be Dismissed.

The Moving Defendants seek dismissal of Plaintiff's § 1983 claims against the individually named health care personnel, Defendants Moka, Hall, McBride, DiBiase-

Johnston, Torres, Parker, Cornell, and Westfield, because Plaintiff has not sufficiently alleged their personal involvement in a constitutional violation. Plaintiff's § 1983 claim alleges a failure to treat in violation of his Eighth and Fourteenth Amendment rights against each of these Defendants. "A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). However, because Plaintiff does not allege whether he was a pretrial detainee or detained following a conviction, the court will analyze his § 1983 claim under both standards.

The Eighth and Fourteenth Amendments forbid "deliberate indifference to serious medical needs of prisoners[.]" *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *see also Davis v. Cnty. of Nassau*, 355 F. Supp. 2d 668, 674 (E.D.N.Y. 2005) ("The Fourteenth Amendment has been held to afford pretrial detainees at least as much protection from cruel detention conditions as the Eighth Amendment affords postconviction prisoners from cruel punishment.").

To state a claim under the Eighth Amendment based on deliberate indifference, a plaintiff must plead: "(a) conditions of confinement that objectively pose an unreasonable risk of serious harm to their current or future health, and (b) that the defendant acted with 'deliberate indifference.'" *Vega v. Semple*, 963 F.3d 259, 273 (2d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Deliberate indifference under the Eighth Amendment means the official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

To state a claim of deliberate indifference under the Due Process Clause of the Fourteenth Amendment, a plaintiff must allege:

> (a) conditions that objectively pose an unreasonable risk of serious damage
> to . . . health; and (b) that the defendant-official acted intentionally to

> impose the alleged condition, or recklessly failed to act with reasonable
> care to mitigate the risk that the condition posed to the pretrial detainee
> even though the defendant-official knew, *or should have known*, that the
> condition posed an excessive risk to health or safety.

*Vega*, 963 at 273-74 (internal footnote, citations, and quotation marks omitted) (alteration and emphasis in original). Under the Fourteenth Amendment, deliberate indifference "is said to be defined objectively." *Id.* at 274.

In his Amended Complaint, Plaintiff alleges that in the last two weeks of October 2019 he reported symptoms of fatigue, abdominal pain and discomfort, fever, dark urine, and yellowing of his skin and eyes. After his initial report, he alleges his symptoms worsened, and he told Defendants that he needed to go to the emergency room but was denied appropriate care. Ultimately, he was hospitalized for his symptoms for approximately one week. Plaintiff alleges, upon information and belief, that Defendants knew about a Hepatitis A outbreak and did nothing to prevent his exposure to it. These allegations are sufficient to plausibly plead a constitutional violation that Defendants deliberately disregarded the serious risks of harm that the Hepatitis A outbreak posed to Plaintiff's health and well-being.

In order to allege a violation under § 1983 against an individual defendant, a plaintiff must further plausibly allege the defendant's personal involvement in the constitutional violation. *See Darby v. Greenman*, 14 F.4th 124, 130 (2d Cir. 2021) ("[The plaintiff] fails to state a [§ 1983] claim against the [ d]efendants because he does not allege any 'personal involvement in alleged constitutional deprivations.'") (alteration adopted) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)). The Second Circuit has held that "personal involvement" under § 1983 means "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

Plaintiff alleges that between October 15, 2019 and October 23, 2019, he "reported" his symptoms to Defendants Moka, Hall, McBride, DiBiase-Johnston, Torres, Parker, and Cornell and "was evaluated by" Defendant Westfield for his symptoms, yet

"[h]is Hepatitis went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury." (Doc. 17 at 21-22, ¶¶ 70-76). Plaintiff claims he "made other complaints of a similar nature" to John Doe Deputies and John Doe Medical Professionals. *Id.* at 22, ¶ 77. Plaintiff asserts these factual allegations "show[] that the individual Defendants deliberately disregarded the serious risk of harm that Hepatitis A posed to Plaintiff and his well-being." *Id.* at ¶ 79.

The Moving Defendants argue that Plaintiff does not allege any "unlawful conduct by any individually named [D]efendant" but only that "Plaintiff received medical care and treatment from all the individually named correctional health professionals in response to various sick call requests made by the Plaintiff." (Doc. 24-2 at 5.) The Moving Defendants contend that the only conduct alleged is that the individual Defendants "rendered medical care and treatment[,]" *id.* at 4-5, and negligence or medical malpractice are not viable § 1983 claims.

"It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. . . . Moreover, negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (citations omitted). However, "certain instances of medical malpractice may rise to the level of deliberate indifference; namely, when the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." *Id.* (internal quotation marks and citations omitted). "In certain instances, a physician may be deliberately indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan." *Id.* (quoting *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974)). "Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case." *Id.*

At this juncture, the court cannot weigh the evidence to determine whether the individual Defendants' acts or omissions were reasonable, negligent, or rose to the level of deliberate indifference. Plaintiff has alleged that each individual Defendant knew there was a Hepatitis A outbreak, was personally involved in Plaintiff's treatment and care,

8

knew Plaintiff was experiencing severe symptoms consistent with Hepatitis A, and yet pursued a course of treatment of oral hydration and over-the-counter pain medication for over a week when more intensive treatment was necessary. Although Plaintiff does not allege that the individual Defendants "were personally involved in any deliberate delay of treatment or failure to provide medical care to Plaintiff," *Brown v. Fischer*, 2018 WL 4177935, at *4 (W.D.N.Y. Aug. 29, 2018), at the pleading stage, it is sufficient that Plaintiff has alleged that each individual Defendant was personally involved in providing him "'an easier and less efficacious'" course of treatment, which may, depending on the facts of the case, constitute "deliberate indifference." *Chance*, 143 F.3d at 703 (quoting *Williams*, 508 F.2d at 544).

Because Plaintiff has plausibly alleged their personal involvement, the Moving Defendants' request to dismiss Plaintiff's § 1983 claims against Defendants Moka, Hall, McBride, DiBiase-Johnston, Torres, Parker, Cornell, and Westfield is DENIED.

**B.    Whether Plaintiff's *Monell* Claims Against County of Erie Should Be Dismissed.**

Under *Monell*, a municipality may be liable under 42 U.S.C. § 1983 for its employees' unconstitutional actions "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). To assert a *Monell* claim, a plaintiff must plead: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (citing *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)). "The mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Cotto v. City of New York*, 803 F. App'x 500, 503 (2d Cir. 2020) (alteration and quotation marks omitted) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995)). For this reason, "boilerplate language echoing the requirements contained in *Monell*[,]" *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 302 (S.D.N.Y. 2015), will not suffice.

Although "[a] plaintiff is not required to identify an express rule or regulation in order to establish a *Monell* claim, and a court may infer a municipal policy from acts or omissions of the municipality's policy makers, . . . in the absence of other evidence, a 'single incident of errant behavior is an insufficient basis for finding that a municipal policy caused plaintiff's injury.'" *JF v. Carmel Cent. Sch. Dist.*, 168 F. Supp. 3d 609, 617 (S.D.N.Y. 2016) (quoting *Sarus v. Rotundo*, 831 F.2d 397, 402-03 (2d Cir. 1987)); *see DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (concluding that "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy"). There are, however, "numerous examples from within the Second Circuit in which the district court allowed a *Monell* claim to survive [a motion to dismiss] where the [p]laintiff alleged only a few examples of similar misconduct." *See DiPippo v. Cnty. of Putnam*, 2019 WL 1004152, at *10 (S.D.N.Y. Feb. 28, 2019) (collecting cases).

Plaintiff claims County of Erie had a policy or custom of failing to protect those in its custody from imminent health problems and failing to provide those same individuals adequate medical treatment. To support this allegation, Plaintiff cites two lawsuits filed in the past thirteen years against County of Erie which he alleges demonstrate similar misconduct. The court may consider these cases because Plaintiff "relies heavily upon [their] terms and effect," making them integral to the Amended Complaint, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), and because they are properly subject to judicial notice under Fed. R. Evid. 201. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (internal quotation marks omitted) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("On a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case. A complaint is

also deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.") (alterations adopted) (internal quotation marks and citations omitted). The court, however, need not accept Plaintiff's characterizations of the cited cases.

Plaintiff relies upon *United States v. Erie Cnty., N.Y.*, a 2009 lawsuit in which the Department of Justice "alleged that the conditions at the Erie County facilities violated the federal constitutional rights of the inmates housed there by failing (a) to protect them from harm, (b) to provide adequate mental health care or medical care, and (c) to engage in adequate suicide prevention." 763 F.3d 235, 236 (2d Cir. 2014). The United States asserted "Eighth and Fourteenth Amendment violations for, *inter alia*, medical indifference, substandard mental health and medical care, and environmental health and safety failings." *Id.* at 237. While Plaintiff alleges this lawsuit "revealed" deficient medical care and unsanitary conditions in facilities operated by County of Erie, (Doc. 17 at 25-30), the lawsuit ended in a settlement whereby "the claims against the individual defendant-officials were dismissed, and . . . Erie County did not admit wrongdoing[.]" *Erie Cnty.*, 763 F.3d at 237.

The second case cited by Plaintiff, brought by the New York State Commission of Correction against Timothy B. Howard, individually and in his capacity as Sheriff of Erie County, and County of Erie alleging violation of certain regulations of the Commission, also ended without a finding of deliberate indifference. The only admission of wrongdoing was by Sheriff Howard, who admitted that he "failed to ensure that the Sheriff's Office conducted proper review, investigation, and assessments of several incidents" and failed to submit "timely Reportable Incident forms for several reportable incidents[.]" Final Order and Consent Judgment at 4, *New York State Comm'n of Corr. v. Howard*, No. 803433/2021 (N.Y. Sup. Ct., Erie Cnty. June 15, 2021), ECF 10.

Two cases settled without an admission of wrongdoing or liability by County of Erie "is not enough to plausibly allege a widespread and persistent practice sufficient to infer a policy or custom for *Monell* liability." *Forte v. City of New York*, 2018 WL

4681610, at *10 (S.D.N.Y. Sept. 28, 2018); *see also Walker v. City of New York*, 2015 WL 4254026, at *9 (S.D.N.Y. July 14, 2015) (finding that allegations of thirty-six lawsuits involving allegedly false arrests, none of which resulted in an adjudication or finding of liability, over the span thirteen years, were "insufficient to plausibly support an inference of a widespread custom"); *Walker v. City of New York*, 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014) (finding that plaintiff's reliance on ten complaints, "none resulting in an adjudication of liability[]," over the span of a decade, "hardly suggests the frequency or pervasiveness of the purported custom that is required to state a *Monell* claim"); *Tieman v. City of Newburgh*, 2015 WL 1379652, at *17 (S.D.N.Y. Mar. 26, 2015) (finding lawsuits cited in a complaint "insufficient to plausibly support an inference of a widespread custom" because "even if the civil complaints involved comparable conduct to that alleged here, none resulted in an adjudication of liability") (alteration adopted) (internal quotation marks and citations omitted) (collecting cases).

Because Plaintiff's *Monell* allegations do not plausibly plead a policy or custom of deliberate indifference, Defendants' motion to dismiss Plaintiff's *Monell* claim against County of Erie is GRANTED.

C. **Whether Plaintiff's *Respondeat Superior* Claims and Negligence Claims under § 1983 Should Be Dismissed.**

The Moving Defendants ask the court to dismiss Plaintiff's negligence claims against County of Erie to the extent they rely on *respondeat superior* liability as well as Plaintiff's negligence claims under § 1983. Plaintiff maintains that he "did not assert a negligence claim sounding in respondeat superior or Section[ ]1983 in his amended complaint." (Doc. 28-1 at 24.) Plaintiff is bound by his concession. *See Bergerson v. N.Y. State Off. of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011) ("[A]ll litigants are 'bound by the concessions of freely retained counsel.'") (quoting *Hoodho v. Holder*, 558 F.3d 184, 192 (2d Cir. 2009)); *cf. Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("A court can appropriately treat statements in briefs as binding judicial admissions of fact."). The Moving Defendants' request to dismiss Plaintiff's negligence claim against County of Erie to the extent it is based on *respondeat superior*

liability and Plaintiff's negligence claims under § 1983 is therefore DENIED AS MOOT.

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART the Moving Defendants' motion for judgment on the pleadings. (Doc. 24.) Plaintiff's *Monell* claims against County of Erie are hereby DISMISSED.

SO ORDERED.

Dated this ⟶6th⟵ day of May, 2022.

Christina Reiss, District Judge
United States District Court